**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**


| | |
|---|---|
| **DEBORAH R. SHIPPEN,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | **CIVIL ACTION** |
| **v.** ) | |
| ) | **No. 13-1106-JWL** |
| **CAROLYN W. COLVIN,** ) | |
| **Acting Commissioner of Social Security,** ) | |
| ) | |
| **Defendant.** ) | |
| _____ ) | |


**MEMORANDUM AND ORDER**


Plaintiff seeks review of a decision of the Commissioner of Social Security

(hereinafter Commissioner) denying Social Security Disability (SSD) benefits under

sections 216(i) and 223 of the Social Security Act.  42 U.S.C. §§ 416(i) and 423

(hereinafter the Act).  Finding no error, the court ORDERS that judgment shall be entered

pursuant to the fourth sentence of 42 U.S.C. § 405(g) AFFIRMING the decision below.

**I.      Background**

Plaintiff applied for SSD benefits, alleging disability beginning February 25,

2008.[1]  (R. 12, 114-20).  In due course, Plaintiff exhausted proceedings before the

Commissioner, and now seeks judicial review of the final decision denying benefits.  She

---

[1]The court recognizes that Plaintiff's application alleged an onset date of January
1, 2007 (R. 114), however, at the ALJ hearing, counsel for Plaintiff amended the alleged
onset date to February 25, 2008.  (R. 12, 31).

alleges the Administrative Law Judge (ALJ) erred in his evaluation of the medical

opinions and in his residual functional capacity (RFC) assessment, and that substantial

record evidence does not support the determination that Plaintiff can perform a range of

light work.

The court's review is guided by the Act. Wall v. Astrue, 561 F.3d 1048, 1052

(10th Cir. 2009). Section 405(g) of the Act provides that in judicial review "[t]he

findings of the Commissioner as to any fact, if supported by substantial evidence, shall be

conclusive." 42 U.S.C. § 405(g). The court must determine whether the ALJ's factual

findings are supported by substantial evidence in the record and whether he applied the

correct legal standard. Lax v. Astrue, 489 F.3d 1080, 1084 (10th Cir. 2007); accord,

White v. Barnhart, 287 F.3d 903, 905 (10th Cir. 2001). Substantial evidence is more than

a scintilla, but it is less than a preponderance; it is such evidence as a reasonable mind

might accept to support a conclusion. Richardson v. Perales, 402 U.S. 389, 401 (1971);

Wall, 561 F.3d at 1052; Gossett v. Bowen, 862 F.2d 802, 804 (10th Cir. 1988).

The court may "neither reweigh the evidence nor substitute [its] judgment for that

of the agency." Bowman v. Astrue, 511 F.3d 1270, 1272 (10th Cir. 2008) (quoting

Casias v. Sec'y of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991)); accord,

Hackett v. Barnhart, 395 F.3d 1168, 1172 (10th Cir. 2005). Nonetheless, the

determination whether substantial evidence supports the Commissioner's decision is not

simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by

other evidence or if it constitutes mere conclusion.  Gossett, 862 F.2d at 804-05; Ray v.

Bowen, 865 F.2d 222, 224 (10th Cir. 1989).

The Commissioner uses the familiar five-step sequential process to evaluate a

claim for disability.  20 C.F.R. § 404.1520; Wilson v. Astrue, 602 F.3d 1136, 1139 (10th

Cir. 2010) (citing Williams v. Bowen, 844 F.2d 748, 750 (10th Cir. 1988)).  "If a

determination can be made at any of the steps that a claimant is or is not disabled,

evaluation under a subsequent step is not necessary."  Wilson, 602 F.3d at 1139 (quoting

Lax, 489 F.3d at 1084).  In the first three steps, the Commissioner determines whether

claimant has engaged in substantial gainful activity since the alleged onset, whether she

has a severe impairment(s), and whether the severity of her impairment(s) meets or equals

the severity of any impairment in the Listing of Impairments (20 C.F.R., Pt. 404, Subpt.

P, App. 1).  Williams, 844 F.2d at 750-51.  After evaluating step three, the Commissioner

assesses claimant's RFC.  20 C.F.R. § 404.1520(e).  This assessment is used at both step

four and step five of the sequential evaluation process.  Id.

The Commissioner next evaluates steps four and five of the sequential process--

determining at step four whether, in light of the RFC assessed, claimant can perform her

past relevant work; and at step five whether, when also considering the vocational factors

of age, education, and work experience, claimant is able to perform other work in the

economy.  Wilson, 602 F.3d at 1139 (quoting Lax, 489 F.3d at 1084).  In steps one

through four the burden is on Plaintiff to prove a disability that prevents performance of

past relevant work.  Blea v. Barnhart, 466 F.3d 903, 907 (10th Cir. 2006); accord,

Dikeman v. Halter, 245 F.3d 1182, 1184 (10th Cir. 2001); Williams, 844 F.2d at 751 n.2.

At step five, the burden shifts to the Commissioner to show that there are jobs in the

economy which are within the RFC assessed.  Id.; Haddock v. Apfel, 196 F.3d 1084,

1088 (10th Cir. 1999).

The court will address each issue raised, in the order presented in Plaintiff's Brief.

## II.     Evaluation of the Medical Opinions

Plaintiff claims the ALJ erred in weighing the medical opinions, arguing that the

opinion of Dr. Vogelsang, to which the ALJ accorded substantial weight was contradicted

by the other medical opinions (including the treating source opinion of Dr. Guthrie) and

by the record evidence.  The Commissioner argues that the ALJ evaluated the medical

opinions in accordance with the correct legal standard, and that substantial record

evidence supports that evaluation.  Moreover, she points out that "[w]here the 'ALJ

articulated adequate reasons for disregarding' a treating physician's opinion, the Court

must affirm although had the Court been the fact finder, it 'may well have reached a

different conclusion concerning the weight to be given [the physician's] disability

assessment.'"  (Pl. Br. 14) (quoting White, 287 F.3d at 908).

### A.     The ALJ's Determination

The ALJ assessed Plaintiff with the RFC for a range of light work, restricted by the

need to limit any one activity to two hours at a time; the need to limit use of the left upper

extremity to no more than frequent pushing or pulling and no more than occasional

handling, fingering, or feeling; and the need to limit use of the right upper extremity to no

more than frequent handling, fingering, and feeling. (R. 15). He restricted Plaintiff to

only occasional overhead reaching, and no exposure to temperature extremes, vibration,

or workplace hazards such as unprotected heights and dangerous moving machinery. Id.

The ALJ explained his evaluation of Dr. Guthrie's treating source opinion:

> On March 10, 2011, treating physician Richard A. Guthrie, M.D.,
> documented in a letter that the claimant was on an insulin infusion pump,
> and that she had multiple daily blood glucose levels, and still had widely
> fluctuating blood glucose levels. (Exhibit 15F). The doctor noted that at
> the claimant's last appointment, she had concerns regarding hypoglycemia
> unawareness, and that she had some loss of feeling in her left hand. The
> claimant also informed the doctor on a previous office visit that she would
> lose her balance when she stood or walked, due to numbness in her feet.
> The claimant also reported that if she sat or stood for prolonged periods, her
> feet and ankles would swell. Dr. Guthrie reported that the claimant had
> hyperlipidemia, type 1 diabetes, and symptoms of neuropathy with left hand
> numbness, balance issues (related to neuropathy), and temperature
> insensitivity. (Exhibit 15F). The undersigned gives substantial weight to
> Dr. Guthrie's opinion regarding the claimant's neuropathy, balance issues,
> and temperature insensitivity, and feet and ankle swelling, due to its
> consistency with the medical evidence. Taking this opinion into
> consideration when assessing the residual functional capacity, the
> undersigned concludes that the claimant should be able to lift, carry, stand,
> and walk no more than 2 hours at a time. Additionally, the claimant can
> have no exposure to temperature extremes or vibration due to neuropathy
> issues.

(R. 16).

The ALJ also accorded substantial weight to the opinion of a state agency medical

consultant, Dr. Vogelsang, because he found her opinion consistent with the medical

evidence, and because he found she provided specific reasons for her opinion grounded in

the record evidence. (R. 19). The ALJ provided "lesser weight" to the opinion of

Plaintiff's podiatrist, Dr. Galbraith, that Plaintiff should not work in a position that

requires any standing or walking, because the ALJ found the opinion inconsistent with the medical evidence, with Dr. Galbraith's treatment notes, with Plaintiff's extensive regular activities, and because "it is obvious from the record that the claimant continues to retain the ability to" work in a position requiring standing and walking. Id. Finally, the ALJ acknowledged Dr. Eyster's opinion that Plaintiff has an impairment of function of her hands that interferes with her ability to work, but found that the RFC assessed "takes this impairment into consideration by limiting the claimant's hand use." Id.

## B.    Analysis

As Plaintiff's Brief suggests (Pl. Br. 5-6), a treating physician's opinion about the nature and severity of plaintiff's impairments should be given controlling weight by the Commissioner if it is well supported by clinical and laboratory diagnostic techniques and if it is not inconsistent with other substantial evidence in the record. Watkins v. Barnhart, 350 F.3d 1297, 1300-01 (10th Cir. 2003); 20 C.F.R. § 404.1527(d)(2). When a treating physician opinion is not given controlling weight, the ALJ must nonetheless specify what lesser weight he assigned the treating physician's opinion. Robinson v. Barnhart, 366 F.3d 1078, 1083 (10th Cir. 2004).

A treating source opinion which is not entitled to controlling weight is "still entitled to deference and must be weighed using all of the factors provided in 20 C.F.R. § 404.1527." Watkins, 350 F.3d at 1300. Those factors are: (1) length of treatment relationship and frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing

performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion. Id. at 1301; 20 C.F.R. § 404.1527(d)(2-6); see also Drapeau v. Massanari, 255 F.3d 1211, 1213 (10th Cir. 2001) (citing Goatcher v. Dep't of Health & Human Servs., 52 F.3d 288, 290 (10th Cir. 1995)). Nevertheless, the court will not insist on a factor-by-factor analysis so long as the "ALJ's decision [is] 'sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight.'" Oldham v. Astrue, 509 F.3d 1254, 1258 (10th Cir. 2007) (quoting Watkins, 350 F.3d at 1300).

After considering the regulatory factors, the ALJ must give reasons in his decision for the weight he ultimately assigns the opinion. If he rejects the opinion completely, he must give specific, legitimate reasons for doing so. Watkins, 350 F.3d at 1301.

Plaintiff quotes Dr. Guthrie's opinion, the ALJ's discussion of Dr. Guthrie's opinion, and the ALJ's summary of the medical evidence regarding diabetes and peripheral neuropathy, and cites addition evidence regarding Plaintiff's treatment with Mid-America Diabetes Associates where Dr. Guthrie provided treatment for Plaintiff. (Pl. Br. 6-8). She then argues that Dr. Guthrie's opinion, "including his opinion that the Plaintiff was unable to maintain employment, should have been given controlling

weight," or alternatively, that "the ALJ should have explained why Dr. Guthrie's opinion regarding Plaintiff's inability to maintain employment was rejected." Id. at 8.

The error in Plaintiff's argument that Dr. Guthrie's opinion should have been given controlling weight is shown by her admission that Dr. Guthrie's opinion is inconsistent with Dr. Vogelsang's opinion, (Pl. Br. 5) (Dr. Vogelsang's opinion "was contradicted by the other medical opinions . . . including . . . Dr. Guthrie."), and by her recognition that controlling weight may be given to a treating source opinion only if it "is [(2)] not inconsistent with the other substantial evidence in" the case record. (Pl. Br. 6).

The threshold for denying controlling weight is low. The ALJ need only find evidence which is "such relevant evidence as a reasonable mind would accept as adequate to support a conclusion that is contrary to the conclusion expressed in the [treating source's] medical opinion." Soc. Sec. Ruling (SSR) 96-2, West's Soc. Sec. Reporting Serv., Rulings 113 (Supp. 2013). SSR 96-2p explains that the term "substantial evidence" as used in determining whether a treating source opinion is worthy of "controlling weight" is given the same meaning as determined by the Court in Richardson, 402 U.S. 389 (1971). Id. As the ruling explains, evidence is "substantial evidence" precluding the award of "controlling weight," if it is "such relevant evidence as a reasonable mind would accept as adequate to support a conclusion that is contrary to the conclusion expressed in the medical opinion." Id. Dr. Vogelsang's opinion is just such evidence. She is a state agency medical consultant experienced in evaluating medical evidence in the context of the Social Security disability review process, and she is a

8

physician.  While it is clear that Plaintiff does not accept Dr. Vogelsang's opinion, that

opinion is nonetheless "such relevant evidence as a reasonable mind would accept as

adequate to support a conclusion that is contrary to the conclusion expressed" by

Plaintiff's treating physician, Dr. Guthrie.  Therefore, it is clear that the ALJ did not err in

failing to accord controlling weight to Dr. Guthrie's opinion.

Plaintiff's argument that the ALJ should have explained why he rejected  Dr.

Guthrie's opinion regarding Plaintiff's inability to maintain employment is also without

merit.  It is by no means clear that Dr. Guthrie opined that Plaintiff cannot maintain

employment.  To be sure, Dr. Guthrie stated that Plaintiff "has multiple problems that

have lead [sic] to her inability to maintain employment."  (Pl. Br. 6).  However, that

statement is the opening sentence to a paragraph in which Dr. Guthrie explained that

Plaintiff is on an insulin infusion pump and checks her blood glucose levels multiple

times daily, and in which he listed the "concerns" Plaintiff expressed at her last

appointment:

> [she] has hypoglycemia unawareness.  states in her left hand she cannot tell
> if something is too hot.  loses her balance when she stands or walks due to
> losing some of the feeling in her feet.  if she sits or stands all day long her
> feet and ankles swell.  has background retinopathy.  states her feet get cold
> all of the time.  states it is so bad that she uses a heating pad at night to keep
> them warm.

(R.382) (quoted as it appears in the doctor's letter--without leading capitals).  In the very

next paragraph, Dr. Guthrie stated his diagnoses, certain additional symptoms, and his

opinion with regard to Plaintiff's condition.  Id.  He concluded the body of his letter with

this caution, "Actually functionality would best be assessed by an occupational medicine specialist." Id.

On this record, the court cannot find with certainty that Dr. Guthrie was of the medical opinion that Plaintiff is unable to maintain employment. Moreover, the ALJ stated that he gave "substantial weight to Dr. Guthrie's opinion regarding the claimant's neuropathy, balance issues, and temperature insensitivity, and feet and ankle swelling, due to its consistency with the medical evidence." (R. 16) (emphasis added). Because the ALJ's understanding of Dr. Guthrie's opinion is a reasonable conclusion and is based upon the record evidence, the court must accept it. "The possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's findings from being supported by substantial evidence. We may not displace the agency's choice between two fairly conflicting views, even though the court would justifiably have made a different choice had the matter been before it de novo." Lax, 489 F.3d at 1084 (citations, quotations, and bracket omitted); see also, Consolo v. Fed. Maritime Comm'n, 383 U.S. 607, 620 (1966) (same). Plaintiff has shown no error in the ALJ's evaluation of Dr. Guthrie's opinion.

Plaintiff's Brief summarizes Dr. Vogelsang's medical opinion and the ALJ's decision to give substantial weight to that opinion, but makes no argument (other than the negative implications of the argument that greater weight should have been given to the other medical opinions) suggesting why it might be error for the ALJ to have accorded

10

that weight. (Pl. Br. 8-9). The court will not make arguments for Plaintiff and finds that

she has waived any argument in that regard.

Plaintiff's arguments with regard to Dr. Galbraith's and Dr. Eyster's opinions are

to a similar effect. In each case, she summarized the physician's opinion, certain

evidence that she apparently finds supportive of that opinion, and the ALJ's finding with

regard to that physician's opinion, and implied without stating that the ALJ's opinion is

obviously erroneous when considering the summary provided by Plaintiff. The court

does not follow Plaintiff's rationale entirely, and certainly does not agree that there is an

obvious error.

> As to Dr. Galbraith's opinion, Plaintiff concludes her argument:
>
> The ALJ wrote that it was obvious from the record that Plaintiff continues
> to retain the ability to stand and walk. (R. 2, 19). While the Plaintiff does
> retain the ability to stand and walk, she testified that she has to alternate
> between sitting, standing and lying down to relieve the symptoms of her
> severe diabetic neuropathy[,] and Plaintiff's podiatrist recommended that
> she not work in a position that would require any standing or walking.

(Pl. Br. 10). As the court noted above, the ALJ provided four reasons to discount Dr.

Galbraith's opinion, including that "it is obvious from the record that the claimant

continues to retain the ability to" stand and walk. Plaintiff does not even acknowledge

the other three reasons, and she does not explain why her testimony and Dr. Galbraith's

recommendation require according greater weight to Dr. Galbraith's opinion. Moreover,

the ALJ found that Plaintiff's testimony regarding her symptoms is "not credible" (R. 17),

and Plaintiff does not argue that he erred in that finding.

In similar fashion, Plaintiff concludes her discussion regarding Dr. Eyster's opinion:

> The ALJ wrote that [he] considered Dr. Eyster's opinion and that the RFC the ALJ established in his opinion takes this impairment into consideration by limiting the claimant's hand use. (R. 2, 19). However, that limit was to frequent handling, fingering and feeling with the right upper extremity but only occasionally with the left. It is submitted that the evidence does not support that the Plaintiff has the ability to frequently handle, finger feel [sic] with the right upper extremity. The Plaintiff testified that her hands cramp with use, she drops things and she can only type for ten minutes before having to stop and massage her hands. Her hands go numb and she has lost sensation in both of her hands. Because of these symptoms the Plaintiff does not have the ability to frequently handle, finger and feel with the right upper extremity.

(Pl. Br. 11).

Once again, Plaintiff "submits" that the evidence does not support the ability to frequently use her right hand, but she does not point to evidence other than her own testimony that she is unable to meet this limitation. As noted above, the ALJ found Plaintiff's allegations not credible, and Plaintiff does not even argue that he erred in that regard. The ALJ found that the evidence demonstrates greater limitations in Plaintiff's left hand than in her right, and he assessed limitations in function of both hands with greater limitations to the left hand than to the right. (R. 15, 16, 18). The record evidence supports these findings.

As Plaintiff argues, Dr. Eyster noted that Plaintiff has problems with her hands bilaterally, has bilateral Dupuytren's contracture of the fourth fingers, bilaterally, and has carpal tunnel symptoms bilaterally. (R. 381). However, the rest of the evidence provides

more detail than Dr. Eyster's general evaluation.  Dr. Guthrie noted that Plaintiff "states in her left hand she cannot tell if something is too hot," and that she has "left hand numbness," and he made no mention of right hand complaints.  (R. 382).  At her physical consultative examination Plaintiff demonstrated 26.6 pounds of grip strength in her right hand and 11.9 pounds of grip strength in her left, early Dupuytren's contractures were noted on the left 4th and 5th digits, diminished sensation in the bilateral hands, and bilateral carpal tunnel syndrome.  (R. 338-39).  At an office visit on April 2, 2008, Dr. Davis noted "a Dupuytren's contracture on the left," and that Plaintiff's hands appear normal, and he recommended "over-the-counter remedies with possibly a warm wax bucket."  (R. 253).  Finally, Dr. Jones began treating Plaintiff on May 28, 2008 and noted her complaints of issues with both hands, but he noted she has injuries, "most notably to her left hand."  (R. 311).  Plaintiff has shown no error in the ALJ's evaluation of the medical opinion evidence.

## II.      Plaintiff's Arguments Regarding RFC Assessment

Plaintiff's RFC arguments consist of a general list of allegations of error without citation to evidence demonstrating the specific error alleged in this case, and without explanation of how Plaintiff believes the ALJ erred.  (Pl. Br. 11-13).  Plaintiff begins by asserting that the ALJ did not cite to any treating or examining source evidence to support his finding that Plaintiff can stand and/or walk 6 hours in a workday, and that there is no medical evidence supporting the finding that Plaintiff needs to limit performance of any one activity to two hours at a time.  (Pl. Br. 12).

As the Commissioner's Brief suggests, "[T]here is no requirement in the regulations for a direct correspondence between an RFC finding and a specific medical opinion." Chapo v. Astrue, 682 F.3d 1285, 1288 (10th Cir. 2012) (citing Howard v. Barnhart, 379 F.3d 945, 949 (10th Cir. 2004); Wall, 561 F.3d at 1068-69). The narrative discussion required by SSR 96-8p to be provided in an RFC assessment does not require citation to a medical opinion, or even to medical evidence in the administrative record for each RFC limitation assessed. Castillo v. Astrue, No. 10-1052, 2011 WL 13627, *11 (D. Kan. Jan. 4, 2011). "What is required is that the discussion describe how the evidence supports the RFC conclusions, and cite specific medical facts and nonmedical evidence supporting the RFC assessment." Id. See also, Thongleuth v. Astrue, No. 10-1101-JWL, 2011 WL 1303374, *13 (D. Kan. Apr. 4, 2011). There is no need for the Commissioner to base the limitations in his RFC assessment upon specific statements in medical evidence or opinions in the record.

Moreover, the ALJ accorded substantial weight to the opinion of Dr. Vogelsang and much, if not most, of his RFC assessment is consistent with her opinion. Compare (R. 15) with (R. 345-51). As discussed above, the court finds no error in the ALJ's determination in that regard.

With regard to the need to limit performance of any one activity to two hours at a time, the ALJ specifically explained the bases for that assessment. He evaluated Dr. Guthrie's opinion and accorded it substantial weight, and explained that "[t]aking this opinion into consideration when assessing the residual functional capacity, the

14

undersigned concludes that the claimant should be able to lift, carry, stand, and walk no more than 2 hours at a time." He also considered and explained the assessment in relation to Plaintiff's testimony:

> The claimant testified that her symptoms include difficulty sitting and standing for prolonged periods due to swelling in her lower extremities. She also testified that she needed to alternate positions during the day. Taking into consideration these symptoms, the undersigned concludes that the claimant should be able to perform the established residual functional capacity, which includes not performing any activities more than two hours at one time.

(R. 17). As noted above, the court found no error in the ALJ's evaluation of Dr. Guthrie's opinion, and Plaintiff has made no attempt to show error in the ALJ's credibility determination or to explain why these specific elements of the ALJ's RFC must be found erroneous.

Plaintiff suggests that the ALJ engaged in a "pick and choose" analysis, adopting findings which support his decision and ignoring or rejecting findings that support Plaintiff's claims. However, other than Plaintiff's own testimony and the evaluation of the medical opinions, which were discussed above, Plaintiff points to no evidence which was allegedly ignored or rejected by the ALJ. Neither the medical opinions nor Plaintiff's allegations was ignored by the ALJ. He acknowledged each of these pieces of evidence and explained his evaluation of each. The ALJ's specific evaluation and rejection or discounting of certain evidence is not a prohibited "pick and choose" analysis. Rather, it is the ALJ's duty.

15

Although an ALJ is not an acceptable medical source, qualified to render a medical opinion, "the ALJ, not a physician, is charged with determining a claimant's RFC from the medical record." Howard, 379 F.3d at 949. "And the ALJ's RFC assessment is an administrative, rather than a medical determination." McDonald v. Astrue, 492 F. App'x 875, 885 (10th Cir. 2012) (citing SSR 96-05p, 1996 WL 374183, at *5 (July 1996)). Because RFC assessment is made based on "all of the evidence in the record, not only the medical evidence, [it is] well within the province of the ALJ." Dixon v. Apfel, No. 98-5167, 1999 WL 651389, at **2 (10th Cir. Aug. 26, 1999); 20 C.F.R. § 404.1545(a). Moreover, the final responsibility for determining RFC rests with the Commissioner. 20 C.F.R. § 404.1527(e)(2), 404.1546. Plaintiff has shown no error in the RFC assessment.

## III.    Support By Substantial Record Evidence

Plaintiff claims that the ALJ's decision is not supported by substantial evidence. She points to record evidence which in her view supports a finding that she is disabled (Pl. Br. 14), and "submits" "that the ALJ's decision that Plaintiff has the residual functional capacity (RFC) for a range of light work is unsupported by substantial evidence." (Pl. Br. 15). Again, Plaintiff does not attempt to explain why the ALJ's view of the evidence cannot be accepted. As the court noted above, the fact that the record might also contain evidence which would tend to support a decision contrary to that of the ALJ does not require a finding of error in the decision. Lax, 489 F.3d at 1084; see also, Consolo, 383 U.S. at 620. As discussed above, Plaintiff has shown no error in the decision at issue. The court's earlier discussion includes a sufficient representative

consideration of the ALJ's rationale and of the evidentiary bases for his decision to demonstrate that substantial evidence supports the decision below. The court need not belabor the point.

        **IT IS THEREFORE ORDERED** that judgment shall be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) AFFIRMING the Commissioner's decision below.

        Dated this 5th day of June 2014, at Kansas City, Kansas.

                        s:/ John W. Lungstrum
                        **John W. Lungstrum**
                        **United States District Judge**